```
                    United States District Court
                      District of Massachusetts
_____
                                    )
BRENDAN J. LYDON,                   )
        Plaintiff,                  )
                                    )
                v.                  )   Civil Action No.
                                    )   12-10398-NMG
LOCAL 103, INTERNATIONAL            )
BROTHERHOOD OF ELECTRICAL           )
WORKERS,                            )
        Defendant.                  )
_____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

Plaintiff alleges that defendant, his union, violated several federal labor laws when it converted from an exclusive to a non-exclusive hiring hall and denied him certain work referrals. Defendant now moves to dismiss, or, in the alternative, for summary judgment on each of plaintiff's claims.

## I.  Background

Plaintiff Brendan J. Lydon ("plaintiff" or "Lydon") has been a member of defendant trade union Local 103, International Brotherhood of Workers ("defendant" or "Local 103") since 1995. Defendant is a chartered member of the International Brotherhood of Electrical Workers ("IBEW"). IBEW establishes and enforces rules and regulations that direct IBEW local unions, including Local 103, with respect to how to conduct their union activities.

Local 103 bargains with the Boston Chapter of the National Electrical Contractors Association ("Boston NECA") regarding the terms and conditions of employment for Local 103 members, including matters related to the dispatching of Local 103 members.

### A.  Local 103's Operation as a "Non-Exclusive Hiring Hall"

Prior to 2006, defendant operated as an "exclusive hiring hall." Union members only obtained work referrals through an out-of-work list that tracked the availability of members for employment opportunities. Defendant allocated work in chronological order: new registrants to the list were required to wait until all of the names ahead of them obtained work before the new registrants could obtain work ("the Seniority System").

Defendant converted to a non-exclusive hiring hall pursuant to a memorandum of understanding between defendant and Boston NECA executed in September, 2006 ("the MOU"). Under the MOU, in addition to receiving work referrals through the out-of-work list, Local 103 members may contact Boston NECA employers directly to solicit work, without regard to the Seniority System, and obtain approval of such solicitation hiring from Local 103 ("the Solicitation System").

In August, 2011 defendant entered into a new Collective Bargaining Agreement with Boston NECA ("the CBA") which was subsequently ratified by its members. Defendant then submitted

the CBA and MOU to IBEW for approval.  Plaintiff alleges, however, that although the adoption of the MOU was "common knowledge" among the members of Local 103 as early as 2006, the MOU is not available for review by members of Local 103 and has never been ratified by them.

When executing collective bargaining agreements local unions of IBEW are generally required to follow a Pattern Agreement published by IBEW.  Any deviations from the Pattern Agreement require IBEW approval before they become effective.  IBEW withholds approval of agreements when deviations exist from so-called "Category I Language" within the Pattern Agreement.  Category I Language within the Pattern Agreement requires local unions to operate as exclusive hiring halls.

In May, 2010 plaintiff wrote a letter to the president of IBEW stating that Local 103 had implemented the Solicitation System and, as a result, was not observing the Pattern Agreement.  In December, 2010 plaintiff filed a formal complaint but no action was taken.  In 2011 after the CBA and MOU were sent to IBEW, plaintiff again wrote a letter to the IBEW president regarding defendant's violation of the Pattern Agreement.  The IBEW president responded that the CBA was conditionally approved but made no reference to the MOU.  In February, 2012 plaintiff filed a complaint with the National Labor Relations Board ("NLRB") which was denied.

### B.   Defendant's Denial of Referrals to Plaintiff

Local 103 administers a "Drug Free Program" through which union members may become eligible for additional jobs with participating Boston NECA employers if they submit to drug testing.  Plaintiff was enrolled in the program but withdrew in May, 2011 after learning of an upcoming long-term construction job available through the out-of-work list and for which he would be in a chronologically favorable position to procure.

Although not entirely clear from his allegations, plaintiff apparently withdrew from the Drug Free Program in order to avoid accumulating work refusals.  When Local 103 members are offered work through the Seniority System, by rule they may refuse those referrals three times before being placed at the bottom of the out-of-work list.  Had plaintiff incurred a third refusal by declining referrals offered to him through the Drug Free Program, he would have been placed at the bottom of the out-of-work list and, therefore, would have been unable to get a referral for the long-term construction job.

For reasons unknown, defendant never received plaintiff's withdrawal from the Drug Free Program.  Plaintiff alleges that, as a result, in October, 2011 defendant erroneously counted plaintiff's refusal to work for a Drug Free employer, work for which he was purportedly ineligible, as plaintiff's third refusal.

Plaintiff challenged that application of the refusal rule to Local 103's Business Manager, Mike Monahan ("Monahan"). Monahan upheld the attribution of three refusals to plaintiff. Plaintiff's subsequent appeal of Monahan's decision was denied. During that time, Monahan allegedly told another member appealing a similar decision that the Solicitation System was in place because there were "undesirables" such as plaintiff in Local 103. Monahan also told the member "that if your being rolled hadn't happened at the time Lydon was rolled, things could have been different."

## II. **Procedural History**

Plaintiff, appearing pro se, filed the Complaint in February, 2012 and subsequently amended it in August, 2012. The Amended Complaint contains four counts, including three substantive claims, alleging that defendant has: engaged in an unfair labor practice, contrary to the Labor Management Relations Act, 29 U.S.C. § 185 et seq. (Count I), violated the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq., by disciplining plaintiff out of retaliation for protected conduct (Count II), and breached its duty of fair representation to plaintiff (Count III). Plaintiff also asserts Count I on behalf of a putative class (Count IV).

In September, 2012 defendant moved to dismiss plaintiff's LMRDA and class action claims pursuant to Fed. R. Civ. P.

12(b)(6). Defendant originally moved to dismiss plaintiff's class action claim on the grounds that pro se plaintiffs may not act on behalf of other individuals. However, plaintiff retained counsel in late September, 2012 and defendant withdrew its motion with respect to the class action claim.

This Court allowed defendant's motion in November, 2012 and dismissed plaintiff's LMRDA claim without prejudice. The Court subsequently allowed plaintiff to file the Second Amended Complaint in December, 2012. Shortly thereafter, defendant filed the instant Motion to Dismiss, or in the alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56.

### III. Analysis

Defendant has moved to dismiss all counts for failure to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Because plaintiff's allegations fall short of the standard required by Rule 12(b)(6) on each count, the Court will allow defendant's motion to dismiss and need not consider defendant's alternative motion for summary judgment pursuant to Fed. R. Civ. P. 56.

    **A.  Standard of Review**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.  When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

**B.   The LMRA Claim**

Plaintiff vaguely alleges that defendant's operation as a non-exclusive hiring hall, because it favors union members who solicit work from employers over those who await a referral through the out-of-work list, constitutes an unfair labor practice as defined in 29 U.S.C. § 158 and violates the Labor Management Relations Act ("the LMRA"), 29 U.S.C. § 185 et seq.

**1.   Unfair Labor Practices by Unions**

Section 185 of the LMRA creates a federal cause of action for claims by and against labor organizations. See 29 U.S.C.

§ 185 (establishing venue, cause of action, and jurisdiction). Section 158, meanwhile, defines unfair labor practices for purposes of the LMRA, dividing them into those engaged in by an employer (§ 158(a)) and those engaged in by a union (§ 158(b)).

Section 158(b)(2) provides that it is an unfair labor practice for a labor organization to cause or attempt to cause an employer to "discriminate" against an employee in regard to hiring or tenure of employment, or any term or condition of employment, to encourage or discourage membership in any labor organization. See §§ 158(a)(3), (b)(2). A labor organization violates this section when it encourages membership by "discriminating against employees who have exercised their right to refrain from membership." Courier-Citizen Co. v. Boston Electrotypers Union No. 11, Int'l Printing & Graphic Commc'ns Union of N. Am., 702 F.2d 273, 278 (1st Cir. 1983); see also NLRB v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers, AFL-CIO, Local 131, 261 F.2d 347, 350 (1st Cir. 1958).

   **2.   Application**

As an initial matter, defendant's implementation of the Solicitation System does not violate § 158(a) because that subsection, by its plain terms, governs only unfair labor practices conducted by employers. While closer to the mark, plaintiff's allegations do not state a plausible claim under § 158(b), either, because that subsection does not prohibit the

-8-

conduct at issue.

Although plaintiff alleges that the Solicitation System "discriminates" against employees who do not solicit employment, plaintiff's use of that term does not align with its statutory meaning. Section 158(b)(2) prohibits "discrimination" only in so far as it relates to actions that distinguish between employees who are union members and those who are not. See Courier-Citizen Co., 702 F.2d at 278. Regardless of whether the work referral occurred through the Seniority System or the Solicitation System, the work referral is for a Local 103 member. Where competing employees are both union members, there is no basis to infer that defendant causes or attempts to cause discrimination based on union membership when hiring a soliciting employee over a non-soliciting employee.

Plaintiff also complains that implementation of the Solicitation System, although agreed upon by Local 103 and Boston NECA, constitutes an unfair labor practice because IBEW's rules and Pattern Agreement require work referrals to be allocated under the Seniority System. Plaintiff, however, points to no authority suggesting that a local union violates federal labor law by failing to adhere to the rules of its international union, much less authority permitting a local union member to charge such violations on behalf of the international. That is particularly true here, where plaintiff acknowledges that IBEW

conditionally approved the CBA, albeit without commenting specifically on the attached MOU detailing the Solicitation System.

Most importantly, there is simply no basis for plaintiff's claim that such transgressions constitute an unfair labor practice. Plaintiff does not identify text within § 158(b) nor any case law interpreting it suggesting that such a system of allocating referrals constitutes an unfair labor practice. To the contrary, the Supreme Court has suggested that "the hiring hall . . . is a matter of negotiation between the parties" to a collective bargaining agreement and that federal statutes prohibit specific discriminatory practices but do not establish a "pervasive regulatory scheme" governing hiring hall practices. See Local 357, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. NLRB, 365 U.S. 667, 676 (1961) (prohibiting NLRB from dictating terms of collective bargaining agreement).

Plaintiff's right to referrals, if any, is governed by the contract between defendant and the Boston NECA, namely, the CBA and MOU. Plaintiff alleges that those agreements permit the Solicitation System and, accordingly, plaintiff has a right to seek referrals via solicitation or seniority. He therefore cannot claim that such system breaches the CBA, much less constitutes an unfair labor practice.

### C. The LMRDA Claim

Plaintiff next alleges defendant violated the Labor Management Reporting and Disclosure Act (the "LMRDA"), 29 U.S.C. § 401 et seq., because defendant purportedly "disciplined" plaintiff within the meaning of 29 U.S.C. §§ 411 and 529 by denying him referrals in retaliation for plaintiff's complaints to IBEW.

#### 1. Discipline for Protected Activity

Sections 411 and 529 make it unlawful for a labor union to "fin[e], suspen[d], expe[l] or otherwise discipline" any of its members for exercising rights secured under the LMRDA. Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 90 (1989).  Among other rights, the LMRDA requires equal rights among union members, protects freedom of speech and freedom of assembly and requires the union to observe certain procedural protections when disciplining its members. See 29 U.S.C. § 411.

Importantly, "otherwise discipline" does not encompass all acts that deter the exercise of protected rights, such as acts constituting ad hoc retaliation by individual union officers. Breininger, 493 U.S. at 91-92.  Rather, the term only includes those acts resulting from an "established disciplinary process," like fines and suspension, and denoting "punishment authorized by the union as a collective entity to enforce its rules." Id.;

accord Linnane v. Gen. Elec. Co., 948 F.2d 69, 71 (1st Cir. 1991).

### 2. Application

In its previous Memorandum and Order, the Court dismissed plaintiff's LMRDA claim because it was not persuaded that the denial of referrals, at least as they were alleged, constituted "discipline" within the meaning of those provisions. See Breininger, 493 U.S. at 91-92.  In his Amended Complaint, plaintiff largely repeats those allegations while still failing to cite any authority compelling a different result.

Plaintiff advances his discipline claim based solely upon a footnote in Breininger.  There, the Supreme Court left open the possibility that the denial of a referral could be "discipline" if imposed on an individual by a union in order to punish violation of union rules. See Breininger, 493 U.S. at 94 n.15. His argument fails because the "discipline" alleged here lacks the official, punitive quality that the Breininger court imagined.  As in Breininger, here the discipline alleged was imposed by the union official administering the hiring hall. See id. at 94 (union business manager and agent allegedly "disciplined" petitioner).  The Breininger court concluded that no discipline had occurred because the union officers' actions did not carry the "opprobrium of the union as an entity." Id. (emphasis in original).  The cited footnote, although it protects

-12-

against "novel forms of penalties," does not apply to "unofficial sub rosa discrimination." Linnane, 948 F.2d at 71 (explaining footnote 15). In that case, as here, plaintiff has failed to allege "that the Union as a body in a proceeding formal or informal, deliberately voted" to discipline him. Id. at 72.

The fact that the Appeals Committee approved the denial of plaintiff's referral based upon the three-refusal rule does not distinguish Breininger. The Appeals Committee was not acting as a disciplinary body but rather afforded plaintiff additional process by reviewing a decision rendered by an administrator of the hiring hall. Its decision to deny plaintiff's appeal did not constitute a "deliberate vote" to deny plaintiff referrals, in the first instance, based upon some misconduct committed by plaintiff, nor was it an act meant to convey the "opprobrium of the union." At most, Monahan's comments suggest plaintiff might have fallen victim to ad hoc retaliation by a union official that is not actionable under the LMRDA. The mere fact that the Appeals Committee affirmed that decision does not convert a denial of a referral into "discipline" within the meaning of the LMRDA.

**D.   Duty of Fair Representation**

Plaintiff alleges that defendant breached its duty of fair representation by bargaining for and adopting the Solicitation System, even though those terms were contrary to the requirements

-13-

of IBEW.  Plaintiff also maintains that defendant breached its duty of fair representation when it violated plaintiff's rights under the LMRA and LMRDA.

### 1.    Statutory Application

The National Labor Relations Act ("the NLRA"), 29 U.S.C. § 151 et seq., as construed by the courts, imposes a duty of fair representation on labor unions which a union breaches when "its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 271 (2009) (internal quotation and citations omitted). The duty derives from the union's status as the exclusive bargaining agent and reflects its statutory obligation to serve the interests of all union members. See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 830 (1st Cir. 1997). The duty extends to both the administration and enforcement of a collective bargaining agreement as well as to its negotiation. 14 Penn Plaza LLC, 556 U.S. at 271.

When a union is charged with breaching its duty in negotiating a collective bargaining agreement it is appropriate to "accord a union a 'wide range of reasonableness' in trying to serve the interests of all its members." Berrigan v. Greyhound Lines, Inc., 782 F.2d 295, 298 (1st Cir. 1986) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)).  This is because

a union is given "great latitude to compromise competing interests among its members." Humphrey v. Moore, 375 U.S. 335, 349-50 (1964). Therefore, the collective bargaining agreement breaches that duty only if it falls so far outside that wide range "that it is wholly irrational or arbitrary." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991) (internal quotations omitted).

### 2. Application

The Court construes plaintiff's allegations to assert that defendant breached its duty by 1) operating a Solicitation System, 2) bargaining for CBA terms contrary to IBEW requirements and 3) denying plaintiff referrals.

Plaintiff's first two claims attack defendant's negotiation of the CBA and must therefore demonstrate that the operation of the Solicitation System fell outside of the "wide range of reasonableness" afforded to unions to represent their competing interests. Plaintiff makes no suggestion that the Solicitation System is irrational or arbitrary; rather, he claims that it prevented anyone from procuring referrals through the out-of-work list based solely upon the Seniority System. Such a claim is inconsistent with plaintiff's own allegations. He asserts that he was in line to obtain a long-term construction job through the out-of-work list but was denied, not by the Solicitation System, but by the three-refusal rule.

Moreover, the Solicitation System can hardly be construed to be irrational or arbitrary when it is open to all union members and, by plaintiff's own admission, all members were aware of the MOU.  Furthermore, no action was taken to amend that system when Local 103 adopted the new CBA in August, 2011.  The fact that plaintiff and several others have allegedly protested the Solicitation System to no avail does not allow the Court reasonably to infer that the implicit inclusion of the Solicitation System in the CBA was wholly irrational or arbitrary. See Humphrey, 375 U.S. at 349-50 (a union is given "great latitude to compromise competing interests among its members").

With respect to his second claim for breach of the duty of fair representation, plaintiff again cites to no authority whatsoever suggesting that a union breaches its duty of fair representation by operating in a manner that is inconsistent with the rules of its international union.  Accordingly, plaintiff's allegations fail to show that the Solicitation System falls outside the "wide range of reasonableness" afforded to defendant.

Finally, defendant urges the Court to adopt the reasoning of the NLRB and find that unions operating as non-exclusive hiring halls are not the exclusive bargaining representatives of their union members with respect to work referrals and therefore do not owe a duty of fair representation with respect to work referrals.

See, e.g., Carpenters Local 537 (E.I. Du Pont), 303 N.L.R.B. 419, 420 (1991) (finding no duty attached to non-exclusive hiring hall because it "lack[ed] the power to put jobs out of the reach of workers"). The reasoning of the NLRB appears sound and the Court will apply it here. Under the Solicitation System, plaintiff was free to obtain employment directly from an NECA contractor rather than by waiting for a referral from the out-of-work list. Defendant, therefore, was not acting as plaintiff's exclusive bargaining agent because plaintiff was free to seek employment himself through solicitation. Accordingly, defendant did not owe a duty of fair representation to plaintiff with respect to referrals.

### ORDER

In accordance with the foregoing, defendant's motion to dismiss (Docket No. 42) is **ALLOWED** and the case is **DISMISSED**.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 17, 2013